ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
PIO S. KIM (Cal. State Bar No. 156679)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2589
    Facsimile: (213) 894-6269
    E-mail: pio.kim@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 11-00455-JAK |
|               Plaintiff, | <u>PLEA AGREEMENT FOR DEFENDANT</u> <u>CHARLES B. HENSLEY</u> |
|          v. | |
| CHARLES B. HENSLEY, | |
|             Defendant. | |

    1.   This constitutes the plea agreement between CHARLES B. HENSLEY ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

    2.  Defendant agrees to:

        a) At the earliest opportunity requested by the USAO

1   and provided by the Court, appear and plead guilty to count four

2   of the indictment in <u>United States v. Charles B. Hensley</u>, CR No.

3   11-00455-JAK.

4          b) Not contest facts agreed to in this agreement.

5          c) Abide by all agreements regarding sentencing factors

6   contained in this agreement.

7          d) Appear for all court appearances, surrender as

8   ordered for service of sentence, obey all conditions of any bond,

9   and obey any other ongoing court order in this matter.

10         e) Not commit any crime; however, offenses that would

11  be excluded for sentencing purposes under Sentencing Guidelines

12  § 4A1.2(c) are not within the scope of this agreement.

13         f) Be truthful at all times with Pretrial Services, the

14  United States Probation Office, and the Court.

15         g) Pay the applicable special assessment at or before

16  the time of sentencing unless defendant lacks the ability to pay

17  and submits a completed financial statement (form OBD-500) to the

18  USAO prior to sentencing.

19     3. Defendant further agrees:

20         a) To consent and hereby consents to administrative and

21  judicial forfeiture of approximately $85,413.61 seized from

22  PayPal accounts xxxxxxxxxxxxxxx7407 and xxxxxxxxxxxxxxx1470

23  ("forfeiture currency"), which accounts defendant acknowledges

24  were established for defendant's benefit and were under his

25  control although held in the names of other persons.

26         d) Not to contest any administrative or judicial

27  forfeiture proceedings commenced against the forfeiture currency.

28

c) To take whatever steps are necessary to pass to the United States clear title to the forfeiture currency, including, without limitation, the execution of a consent decree of forfeiture and the completion of any other legal documents required for the transfer of title to the United States.  In this regard, defendant agrees to cause Ernesto Barron ("Barron"), Sung Hak Pyo ("Pyo") and PRB Pharmacueatical, Inc. each to consent to forfeiture of the forfeiture currency, execute a written agreement to consent to forfeiture of the same, and deliver the executed agreement to the government within 10 days of defendant's execution of this Plea Agreement.  The agreements to be signed and delivered shall be in the form attached to this plea agreement as Attachment B.  Defendant acknowledges that the forfeiture currency constitutes proceeds of the sales of Vira 38, an unapproved drug, in the United States by defendant.

d) Not to assist any other individual or entity in any effort to contest falsely the forfeiture of the forfeiture currency.

f) Not to claim that reasonable cause to seize the forfeiture currency was lacking.

g) to stipulate and hereby stipulate that forfeiture of the forfeiture currency described above may not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

<u>THE USAO'S OBLIGATIONS</u>

4.   The USAO agrees to:

a) Not contest facts agreed to in this agreement.

b) Abide by all agreements regarding sentencing factors

1  contained in this agreement.

2        c) Not to seek restitution provided that Barron, Pyo

3  and PRB Pharmaceutical, Inc. consent to forfeiture of the

4  forfeiture currency as provided in paragraph 3(c) above.

5        d) At the time of sentencing, move to dismiss the

6  remaining counts of the indictment as against defendant.

7  Defendant agrees, however, that at the time of sentencing the

8  Court may consider the dismissed counts in determining the

9  applicable Sentencing Guidelines range, the propriety and extent

10 of any departure from that range, and the sentence to be imposed

11 after consideration of the Sentencing Guidelines and all other

12 relevant factors under 18 U.S.C. § 3553(a).

13                      <u>NATURE OF THE OFFENSE</u>

14       5.    In order for defendant to be guilty of the crime

15 charged in count four, which charges a violation of Title 21,

16 United States Code, Sections 331(d), 355(a) and 333(a), the

17 following must be true: Defendant introduced, delivered for

18 introduction, caused to be introduced, or caused to be delivered

19 for introduction into interstate commerce a new drug without

20 having obtained approval of an application filed pursuant to 21

21 U.S.C. § 355(b) or (j). Defendant admits that defendant is, in

22 fact, guilty of this offense as described in count four of the

23 indictment.

24                          <u>PENALTIES</u>

25       6.    Defendant understands that the statutory maximum

26 sentence that the Court can impose for a violation of Title 21,

27 United States Code, Sections 331(d), 355(a) and 333(a), is: one

28 year of imprisonment; a one-year period of supervised release; a

                                  4

1  fine of $1,000, whichever is greatest; and a mandatory special

2  assessment of $25.

3      7.   Defendant understands that supervised release is a

4  period of time following imprisonment during which defendant will

5  be subject to various restrictions and requirements.  Defendant

6  understands that if defendant violates one or more of the

7  conditions of any supervised release imposed, defendant may be

8  returned to prison for all or part of the term of supervised

9  release authorized by statute for the offense that resulted in

10  the term of supervised release, which could result in defendant

11  serving a total term of imprisonment greater than the statutory

12  maximum stated above.

13      8.   Defendant also understands that, by pleading guilty,

14  defendant may be giving up valuable government benefits and

15  valuable civic rights, such as the right to vote, the right to

16  possess a firearm, the right to hold office, and the right to

17  serve on a jury.

18      9.   Defendant further understands that the conviction in

19  this case may also subject defendant to various other collateral

20  consequences, including but not limited to revocation of

21  probation, parole, or supervised release in another case and

22  suspension or revocation of a professional license.  Defendant

23  understands that unanticipated collateral consequences will not

24  serve as grounds to withdraw defendant's guilty plea.

25                        FACTUAL BASIS

26      10.  Defendant and the USAO agree to the statement of facts

27  attached hereto as Attachment A.  Defendant and the USAO agree

28  that this statement of facts is sufficient to support a plea of

1  guilty to the charge described in this agreement and to establish
2  the Sentencing Guidelines factors set forth in paragraph 11 below
3  but is not meant to be a complete recitation of all facts
4  relevant to the underlying criminal conduct or all facts known to
5  either party that relate to that conduct.

6  <u>SENTENCING FACTORS</u>

7    11.  Defendant understands that in determining defendant's
8  sentence the Court is required to consider the factors set forth
9  in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence
10 and sentencing range established under the United States
11 Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines").
12 Defendant understands that the Sentencing Guidelines are advisory
13 only, that defendant cannot have any expectation of receiving a
14 sentence within the Sentencing Guidelines range, and that after
15 considering the Sentencing Guidelines and the other § 3553(a)
16 factors, the Court will be free to exercise its discretion to
17 impose any sentence it finds appropriate up to the maximum set by
18 statute for the crime of conviction.

19   12.  Defendant and the USAO agree to the following
20 applicable Sentencing Guidelines factor:

21    Base Offense Level  :   6        [U.S.S.G. § 2N2.1]

22    At the time of sentencing, provided that defendant
23 demonstrates an acceptance of responsibility for the offense up
24 to and including the time of sentencing, and satisfies the terms
25 of paragraphs 2 and 3 herein, the UASO will recommend a two-level
26 reduction in the applicable Sentencing Guidelines offense level,
27 pursuant to U.S.S.G. § 3E1.1.  Subject to paragraph 26 below,
28 defendant and the USAO agree not to seek, argue, or suggest in

1   any, either orally or in writing, that any other specific offense

2   characteristics, adjustments, or departures relating to the

3   offense level be imposed.   The USAO further agrees that if the

4   applicable Sentencing Guidelines sentencing range permits

5   probation, it will not oppose defendant's request for a sentence

6   of probation.   However, the government may oppose the specific

7   terms and conditions of such a request.

8         13.   Defendant understands that there is no agreement as to

9   defendant's criminal history or criminal history category.

10         14.   Defendant reserves the right to argue for a sentence

11   outside the sentencing range established by the Sentencing

12   Guidelines based on the factors set forth in 18 U.S.C.

13   § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

14   <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15         15.   Defendant understands that by pleading guilty,

16   defendant gives up the following rights:

17             a) The right to persist in a plea of not guilty.

18             b) The right to a speedy and public trial by jury.

19             c) The right to the assistance of an attorney at trial,

20   including the right to have the Court appoint an attorney to

21   represent defendant at trial.   Defendant understands, however,

22   that, despite defendant's guilty plea, defendant retains the

23   right to be represented by an attorney -- and, if necessary, to

24   have the Court appoint an attorney if defendant cannot afford one

25   -- at every other stage of the proceeding.

26             d) The right to be presumed innocent and to have the

27   burden of proof placed on the government to prove defendant

28   guilty beyond a reasonable doubt.

1    e) The right to confront and cross-examine witnesses

2 against defendant.

3    f) The right to testify on defendant's own behalf and

4 present evidence in opposition to the charges, including calling

5 witnesses and subpoenaing those witnesses to testify.

6    g) The right not to be compelled to testify, and, if

7 defendant chose not to testify or present evidence, to have that

8 choice not be used against defendant.

9    h) Any and all rights to pursue any affirmative

10 defenses, Fourth Amendment or Fifth Amendment claims, and other

11 pretrial motions that have been filed or could be filed.

12                    WAIVER OF APPEAL OF CONVICTION

13    16.  Defendant understands that, with the exception of an

14 appeal based on a claim that defendant's guilty plea was

15 involuntary, by pleading guilty defendant is waiving and giving

16 up any right to appeal defendant's conviction on the offense to

17 which defendant is pleading guilty.

18 LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

19    17.  Defendant agrees that, provided the Court imposes a

20 total term of imprisonment within or below the range

21 corresponding to an offense level of 6 and the criminal history

22 category calculated by the Court, defendant gives up the right to

23 appeal all of the following: (a) the procedures and calculations

24 used to determine and impose any portion of the sentence; (b) the

25 term of imprisonment imposed by the Court; (c) the fine imposed

26 by the court, provided it is within the statutory maximum; (d)

27 the term of probation or supervised release imposed by the Court,

28 provided it is within the statutory maximum; and (e) any of the

8

1  following conditions of probation or supervised release imposed

2  by the Court: the standard conditions set forth in General Orders

3  318, 01-05, and/or 05-02 of this Court; the drug testing

4  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

5      18.  Defendant also gives up any right to bring a post-

6  conviction collateral attack on the conviction or sentence,

7  except a post-conviction collateral attack based on a claim of

8  ineffective assistance of counsel, a claim of newly discovered

9  evidence, or an explicitly retroactive change in the applicable

10  Sentencing Guidelines, sentencing statutes, or statutes of

11  conviction.

12      19.  The USAO agrees that, provided (a) all portions of the

13  sentence are at or below the statutory maximum specified above

14  and (b) the Court imposes a term of imprisonment within or above

15  the range corresponding to an offense level of 6 and the criminal

16  history category calculated by the Court, the USAO gives up its

17  right to appeal any portion of the sentence.

18               RESULT OF WITHDRAWAL OF GUILTY PLEA

19      20.  Defendant agrees that if, after entering a guilty plea

20  pursuant to this agreement, defendant seeks to withdraw and

21  succeeds in withdrawing defendant's guilty plea on any basis

22  other than a claim and finding that entry into this plea

23  agreement was involuntary, then (a) the USAO will be relieved of

24  all of its obligations under this agreement; and (b) should the

25  USAO choose to pursue any charge or any civil, administrative, or

26  regulatory action that was either dismissed or not filed as a

27  result of this agreement, then (i) any applicable statute of

28  limitations will be tolled between the date of defendant's

9

1  signing of this agreement and the filing commencing any such

2  action; and (ii) defendant waives and gives up all defenses based

3  on the statute of limitations, any claim of pre-indictment delay,

4  or any speedy trial claim with respect to any such action, except

5  to the extent that such defenses existed as of the date of

6  defendant's signing this agreement.

7                 RESULT OF VACATUR, REVERSAL OR SET-ASIDE

8       21.  Defendant agrees that if the count of conviction is

9  vacated, reversed, or set aside, both the USAO and defendant will

10  be released from all their obligations under this agreement.

11                     EFFECTIVE DATE OF AGREEMENT

12       22.  This agreement is effective upon signature and

13  execution of all required certifications by defendant,

14  defendant's counsel, and an Assistant United States Attorney.

15                         BREACH OF AGREEMENT

16       23.  Defendant agrees that if defendant, at any time after

17  the signature of this agreement and execution of all required

18  certifications by defendant, defendant's counsel, and an

19  Assistant United States Attorney, knowingly violates or fails to

20  perform any of defendant's obligations under this agreement ("a

21  breach"), the USAO may declare this agreement breached.  All of

22  defendant's obligations are material, a single breach of this

23  agreement is sufficient for the USAO to declare a breach, and

24  defendant shall not be deemed to have cured a breach without the

25  express agreement of the USAO in writing.  If the USAO declares

26  this agreement breached, and the Court finds such a breach to

27  have occurred, then: (a) if defendant has previously entered a

28  guilty plea pursuant to this agreement, defendant will not be

able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b) Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

/ /

## COURT AND PROBATION OFFICE NOT PARTIES

25. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a

1  binding prediction or promise regarding the sentence defendant

2  will receive, except that it will be within the statutory

3  maximum.

4                    NO ADDITIONAL AGREEMENTS

5     28.  Defendant understands that, except as set forth herein,

6  there are no promises, understandings, or agreements between the

7  USAO and defendant or defendant's attorney, and that no

8  additional promise, understanding, or agreement may be entered

9  into unless in a writing signed by all parties or on the record

10  in court.

11       PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

12     29.  The parties agree that this agreement will be

13  considered part of the record of defendant's guilty plea hearing

14  as if the entire agreement had been read into the record of the

15  proceeding.

16  AGREED AND ACCEPTED

17  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

18
    ANDRÉ BIROTTE JR.
19  United States Attorney

20  _____          _7-18-11_____
                                      Date
21  PIO S. KIM
    Assistant United States Attorney

22

23  _____          _7/17/11_____
                                      Date
24  CHARLES B. HENSLEY
    Defendant

25

26  _____          _7/7/11_____
                                      Date
27  KERRY R. BENSINGER
    Attorney for Defendant
28  Charles B. Hensley

                          13

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          7/17/11
CHARLES B. HENSLEY                        Date
Defendant

14

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Charles B. Hensley's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____        7/7/11
KERRY R. BENSINGER                      Date
Attorney for Defendant
Charles B. Hensley

15

ATTACHMENT A

<u>STATEMENT OF FACTS</u>

Defendant CHARLES HENSLEY ("defendant") was the owner of PRB Pharmaceuticals ("PRB"), located at 10532 Walker Street, Suite B, Cypress, California 90630 ("Cypress address").  Defendant is the developer of a product called Vira 38.

In or around 2003, defendant sold and shipped to a distributor, Benjamin Li ("Li"), bottles and boxes of Vira 38 without any labels for distribution in Hong Kong.  Li paid for the bottles and cases of Vira 38, and the title to them was transferred to Li.  Defendant and Li discussed and agreed on placing the labels on the boxes and bottles of Vira 38.  The labels stated that Vira 38 was for the "Prevention and Treatment of Influenza."  Li was not able to sell all of the Vira 38, which he purchased from defendant.

Beginning in or around 2005, defendant caused a website to be created and maintained.  The website, which could be accessed from any computer in the world with Internet access, was www.prbpharmiceuticals.com (the "PRB Website").  The PRB Website advertised Vira 38 and allowed customers to order Vira 38 through the website.  The PRB Website provided a telephone number that customers could call to order the product.  The website claimed that Vira 38 would prevent, cure, and mitigate symptoms of the flu.

When customers ordered Vira 38, defendant or his employees would inform Li or his agents of the orders.  Li or his agents

Defendant's initial *CBH*

16

1    would then ship the orders from Hong Kong to the United States

2    directly to the customers or to PRB for delivery to the

3    customers.   The labels on the bottles and boxes of Vira 38 that

4    were shipped to the United States and delivered to PRB customers

5    to fulfill their orders stated that Vira 38 was for the

6    "Prevention and Treatment of Influenza."

7         On or about October 16, 2005, a customer in Wichita, Kansas,

8    placed an order for Vira 38 with PRB.   On or about October 24,

9    2005, Li or his agents mailed 13 bottles of Vira 38 from Hong

10   Kong to the customer in Wichita, Kansas, but the shipment was

11   detained by the FDA in Chicago, Illinois

12        Vira 38 was labeled and advertised for use in the diagnosis,

13   cure, mitigation, treatment, or prevention of disease in man,

14   namely, influenza; and was intended to affect the structure or

15   any function of the body of man.   As such, Vira 38 was a drug

16   within the meaning of the Federal Food, Drug, and Cosmetic Act,

17   Title 21, United States Code, Sections 301-397 ("FDCA").

18        Vira 38 was also a new drug within the meaning of FDCA

19   because it was not generally recognized as safe and effective

20   among experts qualified by scientific training and experience to

21   evaluate the safety and effectiveness of drugs for use under the

22   conditions prescribed, recommended, or suggested in its labeling.

23   Further, it was an unapproved new drug within the meaning of FDCA

24   because there was no new drug application, abbreviated new drug

25   application or notice of claimed exemption for an investigational

26   new drug in effect with the FDA for Vira 38, as required by 21

27              Defendant's initial _CBH_

28

17

1 | U.S.C. § 355(b) and (j).  At the time defendant sold or caused to
2 | be sold the 13 bottles of Vira 38, he knew that he had not
3 | applied for nor received any approval from the FDA to sell Vira
4 | 38.

Defendant's initial *CBH*

18

ATTACHMENT B

**CONSENT TO FORFEITURE**

I, _____, hereby consent to administrative and judicial forfeiture of approximately $85,413.61 seized from PayPal accounts xxxxxxxxxxxxxxx7407 and xxxxxxxxxxxxxxx1470 ("forfeiture currency").   Further, I hereby waive and abandon any and all defense to forfeiture of the forfeiture currency, including any statute of limitations and any defense based on any Constitutional right, and agree that the forfeiture currency may be forfeited without any further notice to me.


Dated: _____, 2011      _____
                                                          (Name)